The prisoner has been brought up on the return of a habeas corpus, and now moves for his discharge, or to be admitted to bail, on the ground that his life has been once put in jeopardy for the same offense for which he now stands committed for trial.
The transcript of the record accompanying the return discloses only the fact that the prisoner was put upon his trial for the murder of Williams, and that no verdict was returned by the jury. An affidavit was annexed which, though ex parte, states other facts which have not been controverted at the bar, and which, therefore, it may be taken for granted are correct. These are that the trial began on Friday morning; that in the course of it the witnesses on both sides were examined, the counsel on the part of the State heard, and that while the counsel for the prisoner was addressing the jury the hour of 12 of Saturday night arrived, of which the judge gave notice to the parties, and then left the bench.
The case has been ably argued on both sides, and certainly a more important principle could not be brought into discussion, whether we view on one side its connection with the interests of public justice, or, on the other, the important bearing it (498) has on the personal security of the citizens and their immunity from undue prosecution. As it is a case in which a court has no discretion, but is bound to yield obedience to the law, without regard to consequences, it is of primary importance to ascertain, amidst the conflict of opinions, on which side the weight of principle and authority rests.
A writer of established reputation on the criminal law remarks that it seems to have been anciently an uncontroverted rule, and hath been allowed even by those of a contrary opinion to have been the general tradition of the law, that a jury sworn and charged in a capital case cannot be discharged without the prisoner's consent until they have given a verdict. It is added that notwithstanding some authorities to the contrary, in the reign of Charles II. this hath been holden for clear law, both in the reign of James II. and since the Revolution of 1688. 2 Hawkins, 619. Lord Coke, who is cited as authority for the general position, lays it down in still broader terms, and so as to render the discharge of the jury in treason, felony, or larceny illegal, even with the consent of the prisoner. 3 Inst., 110. *Page 335 
Much more modern authorities have introduced the exception where the discharge takes place with the prisoner's consent and for his benefit; and this being reasonable and just, may be considered as now well settled.
In the remarkable case of the Kenlocks, reported by Foster, that eminent judge endeavors to prove that the case quoted by Coke from the year-book of Edward III. does not show that the jury was sworn, but only that they were in court and the party arraigned. But Fitzherbert, in his abridgment, understands the case in the same way with Coke; for he alleges that the reason of the judgment was that the inquest, having been once charged, could not be discharged. A majority of the judges in that case admitted the authority of the rule as a good general one, but not as practically applicable to those cases where it would produce great hardships or manifest injustice to the prisoner. In the case quoted, the power of the court to discharge (499) the jury with the prisoner's consent seems to have been for the first time well considered; and they rejected with just animadversion the authority of those cases which had occurred in that period of misrule and persecution preceding the revolution. In one of these the court discharged a jury in a capital case, after evidence given on the part of the Crown, merely for want of sufficient evidence to convict, and in order to bring the prisoner to a second trial, when the Crown should be better prepared! In another, where the prisoner, unassisted by counsel, consented, to his own prejudice, that the jury might be discharged.
These stains upon the administration of justice show to what extremes, in a state of civil discord, the passions of men urge them to trample upon the most salutary principles of law, and in what degree judges, holding their office at the will of the sovereign, were eager to pander to his appetite for blood and forfeitures.
Certain exceptions have been incorporated with the rule by such authority as we are not at liberty to reject, even if we were inclined to do so; but we cannot add to these exceptions without authority, unless the reason for them is equally forcible and conclusive. If the discharge take place with the prisoner's consent, and for his benefit, or where it is occasioned by an overruling necessity, beyond the reach of man's foresight and control, it cannot be the instrument of injustice or oppression to the prisoner. It is impossible to lay down a general rule which may be applicable to all cases that may occur; but to the exception sanctioned in the case of the Kenlocks may be fairly *Page 336 
added that of Elizabeth Meadows, who was taken in labor during the trial. (Foster, 76.) The case where the prisoner became insane, and where a juryman fell down in a fit (Rex v. Edwards, 4 Taunton, 309), were decided on principles from which I do not see that any mischief could arise. Whether (500) that class of cases where the jury have been discharged in consequence of undue practices having been used to keep back witnesses, or in consequence of a juryman's having become intoxicated, stands upon the same authoritative ground, I am not prepared to decide. There is danger to be apprehended from every exception arising from a fact which artifice and cunning may simulate. As at present advised, I think the exceptions, in addition to those I have mentioned, ought to be confined to those cases of extreme and positive necessity which are dispensed by the visitation of God, and which cannot by any contrivance of man be made the engines of obstructing that justice which the safety of all requires should be done to the State, or weakening the efficacy of and rendering illusive that maxim of civil liberty of which the prisoner claims the protection.
There is no case in the British authorities resembling the one under consideration, nor is it likely any such will ever occur. But some cases are furnished by American reporters which it is proper to notice.
In Massachusetts, Boden was indicated for a highway robbery, and the jury being impaneled, and having heard the evidence and the whole of the case, retired; and after being confined the whole night and part of the day, returned into court and informed the judge that they had not agreed on a verdict, and that it was not probable they ever could agree. A juror was withdrawn without the prisoner's consent, and he was afterwards tried and convicted by another jury, and it was holden a good conviction. 9 Mass. 494. It may be collected from this case that the offense charged was not there a capital felony; the arguments of the counsel for the State and the opinion of the court seem to show this. The maxim of the common law, therefore, under which the prisoner seeks shelter in this case, was not violated. Whether the cases of inevitable necessity, cited from the British books, apply to the case of discharging a jury, because they say they have not agreed, (501) and are not likely to agree, appears to me questionable. Juries very often agree, after thinking and saying they could not agree. If the court possessed a discretionary power to discharge a jury in a capital case, upon their saying they could not agree, it is to be apprehended that very slight *Page 337 
endeavors would be made among them to reason with and enlighten each other; and that a disposition would prevail to escape from a duty which every man considers painful. But the difficulties and disadvantages under which the prisoner would enter upon his second trial would probably expose him to increased danger.
It must be conceded that the case of Goodwin, 18 Johns., 200, if rightly decided, is an authority against the prisoner in this case; for although the offense charged was not a capital felony, yet the reasoning extends the whole length of showing that the jury may be discharged in any case, and the prisoner tried again. The distinguished judge who delivered the opinion of the court in that case thought the rule which declares that no person shall be subject for the same offense to be twice put in jeopardy of life or limb means that no person shall be twice tried for the same offense. But I cannot acquiesce in this opinion, for it would seem strange that a familiar maxim of the common law, admitted for ages without denial or controversy, should require a solemn constitutional sanction for the more effectual protection of the citizens. The pleas of "heretofore convicted" and "heretofore acquitted" are interwoven with our criminal law as essentially as the pleas of former judgment between the same parties or the pendency of another suit for the same cause are with our civil law. Could the amendment to the Constitution of the United States mean no more than this, when it provided that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb"? Did the constitutions of several of the States mean no more when they adopted the same article? As the common (502) law of every State already protects the accused against a second trial, not only in crimes of all descriptions, but in questions of civil right, it is to be inferred that the constitutions meant much more, and that their design was to protect the accused against a trial where the first jury had been discharged without due cause.
"Twice put in jeopardy" and "twice put on trial" convey to the mind several and distinct meanings, for we can readily understand how a person has been in jeopardy upon whose case the jury have not passed. The danger and peril of a verdict do not relate to a verdict given. When the jury are impaneled upon the trial of a person charged with a capital offense, and the indictment is not defective, his life is in peril or jeopardy, and continues so throughout the trial. And this is the legal understanding of the term as explained by Mr. Justice Foster *Page 338 
in the case of the Kenlocks: "The discharge of the jury was not to bring the prisoners' lives twice in jeopardy, which is one great inconvenience of discharging jurors in capital cases, but merely in order to give them one chance for their lives, which it was apprehended they had lost by pleading to issue." This is a full admission that one inconvenience of discharging the jury is to put the prisoner twice in jeopardy, which he could not be if trial were meant. The same meaning is ascribed to the expression, 1 Chitty Cr. Law, 63.
Besides those cases in which juries may be discharged from the casual circumstances of illness, there are some others in which the Crown, at least by the consent of the prisoner, is at liberty to withdraw a juror in order to indict him again, or put off his trial. Thus it is laid down that to let him into a ground of defense which he could not otherwise have taken before evidence given, the court may by consent discharge the jury; but it does not seem the prosecutor has the right to bring the prisoner twice into peril of his life. In the same (503) light has the subject been viewed in the Supreme Court of Pennsylvania, in 6 Sergeant and Rawle, 6; and finally, I thought the law in this State to have been settled for thirty years, ever since the case of S. v. Garrigues, 2 N.C. 241, conformably to which decision other cases have occurred of a similar kind, though not reported.
Under this impression of the subject I do not feel the authority of the law to add this additional exception to the rule, since the trial of a prisoner, its conduct and duration, are under the direction and control of the court and counsel, who may in general foresee or make a reasonable conjecture as to the time it may occupy. It would be a rule subject in its very nature to operate oppressively to the prisoner, without any exterior agency or the influence of sinister design. But it would be still more capable, if such were present, of being made an engine of persecution. Not that there is reason to apprehend any such influence in the present tranquil state of the country, and under the existing purity of the administration of justice; but a rule established in such times should be calculated to protect men when strife prevails and the angry passions are let loose, for it cannot be foreseen what may ensue in future; and the law, as now established, must be the rule for posterity, unless the Legislature should think proper to interfere. Should the rule, according to this opinion, facilitate the escape of some guilty persons, the addition of their exceptions might, in other times, lead to the punishment of innocent persons; and we are *Page 339 
admonished by the law that it is better that ten guilty persons escape than that one innocent suffer. My opinion consequently is, that the prisoner cannot be tried again on this charge.
BY THE JUDGES. It seemeth to us that the said Robert Spier is detained in prison to be tried on an indictment, etc.; that on the said indictment the said Robert hath already been tried; that the said Robert cannot be lawfully tried (504) again upon the same indictment, nor for the same offense. Therefore it is ordered by us that upon the said Robert entering into recognizance, etc., to appear, etc., the said Robert shall be wholly released and discharged.
 J. L. TAYLOR, JOHN HALL, L. HENDERSON.
 Approved: S. v. Woodly, 47 N.C. 276; S. v. Tilletson, 52 N.C. 114.
Doubted: S. v. Prince, 63 N.C. 529.